UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

RG Golf Warehouse, Inc.,

        Plaintiff,

v.

The Golf Warehouse, Inc.,

        Defendant.

Case No. 19-cv-0585 (WMW/DTS)

**ORDER**

---

This matter is before the Court on Defendant's motion to dismiss Counts III and IV of Plaintiff's complaint. (Dkt. 13.) For the reasons addressed below, the motion to dismiss is granted.

## BACKGROUND

Plaintiff RG Golf Warehouse, Inc. (RG) owns the registered domain name golfwarehouse.com. Defendant The Golf Warehouse, Inc.[1] (TGW) owns and operates several websites for the sale of golf merchandise and owns the registered trademark "The Golf Warehouse." In 2011, RG and TGW entered into a contract in which RG agreed to refer online customers from its website, golfwarehouse.com, to TGW's websites in exchange for referral fees and commissions. The contract contemplated that TGW would use computer-tracking cookies and other mechanisms to track customer traffic and calculate the amount of commissions owed.

---

[1] TGW asserts that it underwent corporate restructuring and is now The Golf Warehouse, LLC.

By at least as early as 2012, RG determined that TGW had disabled its computer-tracking cookies. RG suspected that TGW was underreporting the commissions it owed to RG so that TGW could better position itself for a possible sale. But TGW "continually assured [RG] that TGW had no intention of keeping earnings from [RG], that there was no cookie issue, that bugs were being worked out, [and] that TGW was performing an exhaustive investigation." On multiple occasions, RG demanded a full report of TGW's sales. TGW did not comply with RG's demands.

TGW terminated the contract with RG on November 11, 2014. On or before this date, RG entered into a separate contract with Golfsmith International (Golfsmith). Similar to its arrangement with TGW, RG agreed to redirect online customers to Golfsmith's website in exchange for referral fees and commissions. But in December 2014, TGW sent a cease-and-desist letter to Golfsmith, warning Golfsmith that TGW deemed redirection of traffic from RG's website, golfwarehouse.com, to any of TGW's competitors as infringement of TGW's registered trademark, "The Golf Warehouse." Golfsmith terminated its contract with RG after receiving TGW's letter.

RG subsequently commenced this lawsuit against TGW, alleging breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), tortious interference with contract (Count III), and fraud (Count IV).[2] The parties stipulated to

---

[2] RG initiated this suit on March 8, 2019, when RG was a citizen of Florida. The record indicates that, on that date, TGW was a citizen of Delaware, Minnesota, or Kansas—not Florida. As such, diversity of citizenship exists. *See Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir. 1990) ("The existence of diversity of citizenship is determined at the time the suit is instituted, and not when the cause of action arose.").

dismiss Count II with prejudice and the Court issued an order to that effect. As such, only Counts I, III, and IV remain. TGW now moves to dismiss RG's tortious interference with contract claim and fraud claim, Counts III and IV, respectively.

## ANALYSIS

TGW moves to dismiss Counts III and IV for failure to state claims on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). TGW argues that Count III is time-barred and Count IV does not state a cause of action that is independent from Count I.

A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions couched as factual allegations may be disregarded. *See Iqbal*, 556 U.S. at 679. And the Court may consider exhibits that are embraced by the pleadings without converting a motion to dismiss to a motion for summary judgment. *Finch v. Unum Life Ins. Co. of Am.*, 465 F. Supp. 2d 901, 902 n.2 (D. Minn. 2006) (citing *Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997)).

## I. Tortious Interference with Contract (Count III)

TGW contends that Count III is barred by the 2-year statute of limitations governing any of the potentially applicable state laws. RG counters that, unlike the other state laws, Minnesota has a 6-year statute of limitations that applies to this claim. As Minnesota law is the appropriate law to apply, RG argues, the tortious-interference claim is not time-barred under the 6-year statute of limitations.

Under Minnesota's choice-of-law principles, in the absence of a controlling choice-of-law provision,[3] courts determine "whether the choice of one state's law over another creates an actual conflict." *Fla. State Bd. of Admin.*, 262 F. Supp. 2d at 1010-11. If a conflict does not exist, the court need not continue the choice-of-law analysis. *Id.* at 1011.

Minnesota has a 6-year statute of limitations for contract disputes, Minn. Stat. § 541.05, and a 2-year statute of limitations that applies to claims for "libel, slander, assault, battery, false imprisonment, or other tort resulting in personal injury," *id.* § 541.07(1). The "other tort" category can include "wrongful interference with business

---

[3] There is an Indiana choice-of-law provision in the contract between RG and TGW. The Court applies Minnesota choice-of-law rules, which honor choice-of-law provisions. *Fla. State Bd. of Admin. v. Law Eng'g & Envtl. Servs., Inc.*, 262 F. Supp. 2d 1004, 1012 (D. Minn. 2003). But when, as here, a choice-of-law provision states that the contract will be governed by the laws of a particular state, that choice-of-law provision does not extend to tort claims unless two conditions are met: (1) the tort claim is "closely related" to the interpretation of the contract and (2) the tort claim falls "within the ambit of the express agreement." *Id.* at 1012-13 (internal quotation marks omitted). Count III, RG's claim for tortious interference with contract, alleges that TGW interfered with RG's contractual relationship with *Golfsmith* by sending an unfounded cease-and-desist letter. This tortious interference claim does not arise out of RG's contract with TGW, nor does resolution of this claim require an interpretation of RG's contract with TGW. Accordingly, the choice-of-law provision does not govern Count III.

relationships by means of defamation, misrepresentation, and intentional infliction of emotional distress." *Larson v. New Richland Care Ctr.*, 538 N.W.2d 915, 920 (Minn. Ct. App. 1995) (overruled on other grounds); *accord Ford v. Minneapolis Pub. Sch.*, 874 N.W.2d 231, 233 (Minn. 2016) (restricting the "other tort" category to common law, not statutory, causes of action).

The conduct underlying a tortious interference claim determines which of Minnesota's statutes of limitations to apply. *See Wild v. Rarig*, 234 N.W.2d 775, 793 (Minn. 1975). If the conduct underlying a tortious interference claim arises from defamation, misrepresentation, or intentional infliction of emotional distress, the 2-year statute of limitations applies. *Compare Wallin v. Minn. Dept. of Corr.*, 598 N.W.2d 393, 401 (Minn. Ct. App. 1999) (holding that plaintiff's claims were governed by Minnesota's 6-year statute of limitations because the tortious interference claims were not based on defamation, misrepresentation, or intentional infliction of emotional distress) *with Wild*, 234 N.W.2d at 793 (holding that plaintiff's tortious interference claim was governed by Minnesota's 2-year statute of limitations because the claim was "essentially a part of [plaintiff's] cause of action for defamation").

Count III alleges that TGW interfered with RG's relationship with Golfsmith by sending Golfsmith a baseless cease-and-desist letter. RG concedes that Count III is based on allegations that TGW "misrepresent[ed]" its trademark rights. Under Minnesota law, tortious interference claims based on misrepresentation are governed by a 2-year statute of limitations. *See Wallin*, 598 N.W.2d at 401. And, as the parties agree that the other state laws potentially implicated by this action also have 2-year statutes of limitations, there is

5

no outcome-determinative conflict. Under *any* of the potentially applicable state laws, RG's tortious interference claim is time-barred.

Accordingly, Count III is dismissed without prejudice.[4]

## II. Fraud (Count IV)

TGW moves to dismiss RG's fraud claim because it is not independent from RG's contract claim. "[A] party to a contract . . . may be liable in tort to the other party for damages from negligence that would be actionable if there were no contract, *but not otherwise*." *Greg Allen Const. Co. v. Estelle*, 798 N.E.2d 171, 175 (Ind. 2003) (emphasis added); *see also id.* at 173 (holding that plaintiff could not recover under tort law in addition to contract law because "there is no claim of injury that the law would protect if there were no contract").[5]

---

[4] The Court is mindful that dismissal with prejudice is a "drastic" sanction, *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985), that may be appropriate, for example, when a plaintiff repeatedly fails to comply with court orders or when amending a complaint would not cure its deficiencies. *See, e.g.*, *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009) (affirming dismissal with prejudice for failure to state a claim because amending complaint would be futile); *Doe v. Cassel*, 403 F.3d 986, 989-90 (8th Cir. 2005) (affirming dismissal with prejudice and noting "with particular interest that the district court did not apply the harsh medicine of dismissal to [plaintiff's] initial complaint, but to her fourth"). Similar circumstances are not present here. RG has filed only one complaint and the Court cannot conclude at this juncture that an amendment would be futile. For these reasons, Count III is dismissed without prejudice.

[5] As recognized in note 3, *supra*, there is an Indiana choice-of-law provision in the contract between RG and TGW. The Court applies Indiana law because, for the reasons addressed below, RG's fraud claim is closely related to the interpretation of the contract. *See Fla. State Bd. of Admin.*, 262 F. Supp. 2d at 1012-13. But, even if applying Minnesota law as RG does, the Court's analysis would be the same. *See Berger v. Nationstar Mortg. LLC*, 118 F. Supp. 3d 1121, 1125-26 (D. Minn. 2015) (applying Minnesota law and explaining that a tort claim will fail when it is indistinguishable from a breach-of-contract claim).

6

Count I, RG's breach-of-contract claim, alleges that TGW failed to pay the amounts due under the contract and falsified the sales data that TGW presented to RG. Count IV, RG's fraud claim, alleges that "[d]uring the term of the Contract," TGW made material misrepresentations to RG about commissions due and TGW concealed relevant information from RG.

TGW's obligation to provide accurate sales and commission data to RG arose out of the parties' contract. The contract requires TGW to "provide a periodic report of such numbers to RG . . . every month, or as otherwise mutually agreed to." Without this contract, TGW has no legal obligation to submit its sales data to RG. RG's fraud claim merely recharacterizes the *same* actions constituting the alleged breach of contract as "material misrepresentations." Because "there is no claim of injury that the law would protect if there were no contract," the fraud and contract claims are not independent of one another. *Greg Allen*, 798 N.E.2d at 173.

RG attempts to recast Count IV as a fraud-in-the-inducement claim, arguing that TGW never intended to honor the contract. On this basis, RG contends that TGW's fraudulent inducement is independent from TGW's *subsequent* breach of contract. RG's argument does not match its claim alleged in the complaint. Count IV does not allege fraud in the inducement. Instead, Count IV repeatedly alleges that TGW acted fraudulently "[d]uring the term of the Contract." As such, RG's fraud claim is not independent from its breach-of-contract claim.

Accordingly, Count IV is dismissed without prejudice.[6]

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.	Defendant The Golf Warehouse, Inc.'s motion to dismiss Counts III and IV, (Dkt. 13), is **GRANTED**.

2.	Count III of Plaintiff RG Golf Warehouse, Inc.'s complaint, (Dkt. 1), is **DISMISSED** without prejudice.

3.	Count IV of Plaintiff RG Golf Warehouse, Inc.'s complaint, (Dkt. 1), is **DISMISSED** without prejudice.


Dated:  August 26, 2019	s/Wilhelmina M. Wright
	Wilhelmina M. Wright
	United States District Judge

---

[6]	For the same reasons as addressed in note 4, *supra*, the dismissal of Count IV is without prejudice.