UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| RG Golf Warehouse, Inc., | Court File No. 19-CV-0585 (WMW/DTS) |
| Plaintiff, | |
| vs. | |
| The Golf Warehouse, Inc., | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR LEAVE TO AMEND PLEADINGS**

**INTRODUCTION**

Plaintiff RG Golf Warehouse, Inc. (**"RG Golf"** or **"Plaintiff"**) submits this memorandum of law in opposition to Defendant The Golf Warehouse, Inc.'s (**"TGW"** or **"Defendant"**) motion for leave to amend its pleadings to assert substantive counterclaims pursuant to Federal Rule of Civil Procedure 15(a)(2). The motion should be denied due to TGW's undue delay, dilatory motive and severely prejudicial to RG Golf. Further, TGW's motion should be, at least partially, denied as being futile. If the Court considers granting the motion, the scheduling order should be extended to avoid substantial prejudice to RG Golf.

1

**RELEVENT FACTUAL BACKGROUND**

This dispute arises in part out of a breach by TGW of the five-year Referral Agreement between RG Golf and TGW. TGW breached the Referral Agreement by failing to perform according to the Referral Agreement terms and losing or destroying critical sales data in anticipation of this litigation (which now has apparently been "recovered").

In February 2011, RG Golf and TGW signed a confidential letter of intent planning a business arrangement whereby RG Golf would refer customers to TGW in exchange for certain referral fees and commissions. Compl. ¶ 6. One month later, RG Golf and TGW executed a five-year Referral Agreement. Compl. ¶ 7; Exhibit A. Pursuant to the Referral Agreement, RG Golf agreed to use its registered domain name, golfwarehouse.com, and other sales channels to direct customers to TGW's websites and call centers in exchange for referral fees and sales commissions. Compl. ¶ 13. In order to document and facilitate the payment of fees and commissions, TGW agreed to track the origin of its sales using computer tracking "cookies," in addition to customer phone numbers and e-mail addresses, to ensure that RG Golf was paid for sales it helped generate. Compl. ¶ 14.

As early as 2011, TGW began positioning itself for sale or acquisition, and in an attempt to appear more profitable, TGW took steps to decrease its marketing costs. Compl. ¶¶ 24–25. As such, TGW manipulated its tracking cookies and sales data to that end in order to make it appear as though its sales were organic and not derived from its

Referral Agreement with RG Golf. Compl. ¶ 25. During the term of the Referral Agreement, TGW had its tracking cookies disengaged at several points, including one outage lasting seven months, which prevented the tracking of customers and sales as contemplated in the Referral Agreement, and prohibited RG Golf from obtaining its properly owed commissions on sales. Compl. ¶¶ 15–17.

On top of its failure to track cookies and accurately document referrals from RG Golf under the Referral Agreement, TGW actively concealed the full extent of the problem and shared only limited data with RG Golf. *Id*. RG Golf confronted TGW about discrepancies in the data provided, and although TGW agreed that it owed RG Golf additional commissions, it only offered RG Golf a nominal sum as compensation. Compl. ¶¶ 20–22.

During the term of the Referral Agreement, TGW failed to pay RG Golf the commissions it earned on sales it generated, made charge-backs against RG Golf for customer returns without timely disclosing them, and made bizarre excuses for not providing RG Golf with sales data. Compl. ¶¶ 17–21. On or about November 11, 2014, TGW unilaterally terminated the Referral Agreement with RG Golf. Compl. ¶ 27.

TGW now, over 9 years since the Referral Agreement was signed and almost 6 years after terminating it, claims they overpaid RG Golf over $230,000.00. Def. Memorandum in Support of Motion at Pg. 4; *See also* Patrick Rooney Decl., Ex. 1, Def's Am. Answer & Counterclaims Against Pl. (collectively, the **"Counterclaim"**).

**ARGUMENT**

A.    **Legal Standard.**

The Eight Circuit has stated that a district court may appropriately deny leave to amend "where there are compelling reasons 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (citations omitted). However, in most cases, "[d]elay alone is insufficient justification; prejudice to the nonmovant must also be shown." *Id.*

Because TGW's motion is the result not only of undue delay and dilatory motive, it would unfairly prejudice RG Golf.

B.    **TGW'S Motion is the Result of Undue Delay and Dilatory Motive.**

The internal "IT Reports" have been a point of contention for years. RG Golf has been requesting these IT Reports since it discovered that TGW had turned the cookies off on their website and used super cookies to override RG Golf's cookies back in 2011/2012. If the Court recalls, this case originated in Florida and was dismissed for jurisdictional reasons. There was, however, limited discovery done in that prior Florida action where, TGW's CFO, Brett Hamrick, submitted a declaration on July 31, 2018 stating among other things:

> Finally, I should point out that TGW is continuing to work to see if the co-called IT Report is irretrievably lost, or whether it can somehow be recreated using

4

> damaged or partial versions of files. In mid-July, an individual from TGW's parent company's IT organization was able to locate an archived version of TGW's website database on one of their servers, as well as data contained in that database. Based on the initial investigation of that version, TGW believes the data is complete and may be usable to recreate reports…

Battina Decl. Ex. A at ¶ 5.

RG Golf filed the current case on March 8, 2019, and not until TGW's responses to Interrogatories and Request for Production of Documents on May 18, 2020 did TGW disclose that they had accessed the internal data which was used to calculate and pay RG Golf's commissions pursuant to the Referral Agreement. Battina Decl. Ex. B at Responses 12, 16.

In response to RG Golf's request for the IT Reports and underlying data, TGW referenced and produced 4 spreadsheets (TGW_00005532; TGW_00005533; TGW_00005534; TGW_0005535) which were allegedly re-created from the raw data. *Id.*

According to TGW however, they have been in possession of the IT Reports, underlying data and alleged re-calculation and over-payment of commissions since May 2019 but have inexplicitly withheld that information until now. Response to Interrogatory number 16 states in part:

> Notwithstanding the decommissioning of the Legacy System, TGW retained the Vmware file ("VMK") that was associated with and/or contained the Legacy System's underlying data on the Northern Tool and Equipment ("NTE") vBlock server. The VMK was recovered by NTE **in or around May 2019** with respect to the database server, and TGW was able to install a copy of the VMK into a standalone Oracle sever at its NTE facilities located in Wichita, Kansas. Following that, TGW was able to extract the data from the Legacy Sever, as well as provide

5

>   its conclusions for the amount paid and owed to RG Golf in TGW's Answer to
>   Interrogatory No. 12.

Battina Decl. Ex. B at Response 16 (emphasis added).

The delay in providing this information for at least a year, if not longer, constitutes undue delay. The dilatory motive is self-evident, wait until the eve of RG Golf's expert deadline and spring the allegedly newly discovered information to submarine its case. RG Golf has gone to extensive lengths and great costs with its current damages expert witness[1]. It was not anticipated a forensic's expert would be needed to gather, analyze and potentially dispute TGW's new claim that they actually overpaid RG Golf. When you combined the undue delay and dilatory motive with the prejudice to RG Golf, the Court should deny the request to amend.

### C.   RG Golf Would Be Severely Prejudiced by the Amendment.

Should the Court grant TGW's motion, RG Golf would be severely prejudiced. Unquestionably, the underlying data has always been in TGW's exclusive possession. Payments made under the Referral Agreement were made some 6-9 years ago. Now, TGW has come forth with newly created spreadsheets claiming TGW actually overpaid RG Golf to the tune of $230,000.00. RG Golf has been requesting this data for years and has only now been told it exists. In granting the motion to allow TGW to amend its pleading and assert the Counterclaim, RG Golf would not have an adequate opportunity

---

[1] Contrary to TGW's assertion, TGW did in fact disclose the identity of its damage's expert in advance of the deadline. *See* Battina Decl. at Ex. C.

6

to engage an electronic forensic expert to analyze the underlying data[2] to either concur with TGW's recent allegations or dispute their conclusions that RG Golf has been overpaid.

Because the current deadline to identify a forensic expert has already passed, RG Golf would be barred from bringing in another relevant expert. Equally, RG Golf cannot possibly provide the forensic expert's report which would be due on July 17, 2020 when it has not even been allowed access to the underlying data. This also affects RG Golf's current damage expert's opinions which are also due on July 17, 2020. RG Golf's current expert is prepared to testify based on information known to date which was compiled and analyzed without the recently disclosed summary spreadsheets provided by TGW. Without the underlying data to support the spreadsheets, which was apparently used to create the them, RG Golf's damage expert's report may need to be supplemented at a later date which could cause a snowball effect on the remaining deadlines.

TGW's proposed Counterclaims are also subject to a laches argument. Should the Court grant the amendment without an extension to the scheduling order, RG Golf's defense of laches becomes a readily available defense[3].

---

[2] There can be no argument that the underlying data is discoverable and TGW has yet to provide it.
[3] Laches is comprised of three elements: (1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party. A mere lapse in time is insufficient; unreasonable delay which causes prejudice or injury is necessary. *Shafer v. Lambie*, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996) (citations omitted).

### D. TGW's Claim for Unjust Enrichment is Futile Because it Falls Outside the Six-Year Statute of Limitations.

The Court should deny TGW's motion to add a claim for unjust enrichment because the claim falls outside the six-year Indiana statute of limitations. TGW has, by its own admission, acted in a dilatory manner and allowed this claim to grow stale. The proposed amendment to add this counterclaim to its answer is therefore futile and should be disallowed.

As cited by TGW, the statute of limitations for unjust enrichment in Indiana is six years. *Crissen v. Gupta*, No. 2:12-cv-00355-JMS-WGH, 2014 U.S. Dist. LEXIS 51094, at *7 n.2 (S.D. Ind. Apr. 14, 2014). TGW argues that because the Referral Agreement was terminated November 11, 2014, its unjust enrichment counterclaim should fall within the six-year statute of limitations, which would, according to TGW's calculation, end on or around November 11, 2020. However, if TGW's calculation were to hold true (measuring from the termination of the Referral Agreement and not from the dates that the alleged overpayments were actually made to RG Golf), TGW's unjust enrichment claim is barred by the statute of limitations for any payments made to RG Golf prior to July 2014 (6 years from TGW's proposed amended pleading).

Alarmingly, in TGW's Counterclaim, it fails to specify when any of the alleged overpayments to RG Golf occurred, except by loosely identifying a time period between 2011 and 2014 and stating that the overpayments may have totaled approximately $230,000.00. TGW attempts to sidestep this issue by alleging:

8

13. Between March 10, 2011 and November 11, 2014, the date when the Referral Agreement terminated, TGW paid RG Golf $548,466.89 in commissions under the Referral Agreement.

14. After it paid these commissions to RG Golf, TGW reviewed its payments to RG Golf under the Referral Agreement. TGW's review determined that it had substantially overpaid RG Golf for amounts RG Golf was not owed under the Referral Agreement.

Dkt. 53-1, Exh. 1 ¶¶ 13-14. By the first sentence in Paragraph 14 above, it is implied that TGW acted in an expeditious or reasonable manner: "After it paid these commissions to RG Golf, TGW reviewed its payments to RG Golf under the Referral Agreement." *Id.* It is vaguely asserted that TGW paid commissions to RG Golf, the Referral Agreement terminated November 11, 2014, and then TGW subsequently reviewed its payments to RG Golf and found alleged overpayments. TGW fails to mention that it apparently "reviewed its payments" to RG Golf more than six years after many of the commission payments under the referral agreement were made to RG Golf. The fact is TGW sat on its unjust enrichment claim almost a year and a half after RG Golf filed suit against TGW and almost one year from the date TGW filed its answer to RG Golf's complaint, and it now seeks to cover for its procrastination. TGW simply cannot be said to have acted reasonably and deliberately in asserting its unjust enrichment counterclaim.

Further, based on the language set forth in TGW's vague Counterclaim, it is clear RG Golf cannot possibly be fairly apprised of the specifics behind TGW's unjust enrichment counterclaim and would be severely prejudiced if the amendment were allowed, as the TGW claims it has just discovered these overpayments, but cannot

9

pinpoint any specifics as to when, why, or how such overpayments were made. Such vague assertions are not enough to overcome any exceptions to the six year statute of limitations in this case, and even if TGW's counterclaim were to relate back, it is completely unclear based on TGW's proposed amendment which overpayments would be barred by the statute of limitations as having been made prior to September 9, 2013 (6 years prior to TGW's original answer in this case; *see* Dkt. 24). Further, TGW failed to alert RG Golf of any such counterclaim or attempt to assert any such counterclaim in its answer, and RG Golf would now be prejudiced in having to defend against a counterclaim brought at this late hour with no ability to rely on expert analysis in its defense. As such, TGW's motion to amend as to its unjust enrichment counterclaim should be denied.

### E. RG Golf's Request for Extension of Scheduling Deadlines.

If the Court considers granting TGW's motion, the scheduling deadlines and trial date should be extended to at least minimize the prejudice to RG Golf, allowing it sufficient time to investigate and defend against the newly proposed Counterclaim (for breach of contract only).

RG Golf is in the process of obtaining an electronic forensic expert to obtain access to and analyze the raw data which was apparently used to create the spreadsheets TGW is relying on to seek an amendment to its pleadings to assert the Counterclaims against RG Golf. Because RG Golf would be severely prejudiced, as

outlined above, should the Court allow TGW's amendment, RG Golf must be allowed sufficient time to conduct both fact and expert discovery related to the Counterclaim and newly provided spreadsheets and anticipated to be provided raw IT data. Consistent with the same, RG Golf's proposal for extended dates are set forth below.

| Description | Original Deadline[4] | New Deadline |
|---|---|---|
| **Discovery Deadline** | 8/21/2020 | 11/30/2020 |
| **Identification of Plaintiff's Experts** | 6/19/2020 | 9/30/2020 |
| **Plaintiff's Expert Disclosures** | 7/17/2020 | 10/30/2020 |
| **Identification of Defendant's Experts** | 8/14/2020 | 11/30/2020 |
| **Defendant's Expert Disclosures** | 9/18/2020 | 12/30/2020 |
| **All Expert Discovery** | 11/13/2020 | 2/26/2020 |
| **Non-Dispositive Motions Relating to Fact Discovery** | 8/21/2020 | 11/30/2020 |
| **Non-Dispositive Motions Relating to Expert Discovery** | 11/20/2020 | 2/26/2021 |
| **Dispositive Motions** | 9/18/2020 | 12/30/2020 |
| **Trial** | 3/22/2021 | 6/14/2021 |

---

[4] As set by the Amended Pretrial Scheduling Order (Dkt. 48).

11

**CONCLUSION**

Plaintiff respectfully requests the Court deny TGW's motion in its entirety based on TGW's undue delay, dilatory motive, and prejudice to RG Golf. Further, the Court should partially deny the proposed amendment as futile to the unjust enrichment claim. If the Court grants TGW's motion, RG Golf respectfully requests the scheduling order be extended as outlined herein.

Dated:  July 7, 2020.                    **TREPANIER MACGILLIS BATTINA P.A.**

                                            *s/Bryan R. Battina*
                                   By: _____
                                      Bryan R. Battina, Atty. Reg. No. 338102
                                        *bbattina@trepanierlaw.com*
                                      8000 Flour Exchange Building
                                      310 Fourth Avenue South
                                      Minneapolis, MN  55415
                                      Phone:  612.455.0500
                                      Fax:  612.455.0501
                                      *www.trepanierlaw.com*

                                   **ATTORNEYS FOR PLAINTIFF**
                                   **RG GOLF WAREHOUSE, INC.**