UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| RG Golf Warehouse, Inc., | Case No. 19-CV-0585 (WMW/DTS) |
| Plaintiff, | |
| vs. | **DEFENDANT'S ANSWERS TO PLAINTIFF'S INTERROGATORIES (SET ONE)** |
| The Golf Warehouse, Inc., | |
| Defendant. | |

Defendant, The Golf Warehouse, Inc. ("Defendant" or "TGW"), responds to Plaintiff, RG Golf Warehouse, Inc.'s ("Plaintiff" or "RG Golf"), Interrogatories (Set One) in compliance with Federal Rules of Civil Procedure 26 and 33 as follows:

## GENERAL OBJECTIONS

1. Each of the following General Objections and Responses is incorporated into each of the Specific Responses and Objections below as if fully repeated therein.

2. TGW submits these General Objections and Responses and agrees to respond to these Interrogatories without intending to waive, and expressly preserving the right, at any time, in accordance with applicable rules, statutes and procedures, (i) to revise, correct, supplement, or clarify any of the responses herein, or (ii) to object and respond to any future other discovery requests.

3. TGW objects to the Interrogatories on the grounds of undue burden, to the extent they ask for addresses of parties, or persons employed by parties, and to the extent they seek information or documents already in RG Golf's control, or to which RG Golf

has equal access, or which are otherwise obtainable from some other source that is more convenient, less burdensome, or less expensive.

4. TGW objects to each and every Interrogatory insofar as it seeks the information or the identification or production of any part of any document that constitutes attorneys' work product, contains attorney-client communications, or is otherwise privileged or exempt from discovery.

5. TGW objects to each and every Interrogatory insofar as it seeks to impose upon TGW any requirement to provide responses beyond the scope or limits of the Federal Rules of Civil Procedure.

6. The inadvertent identification of any privileged document or communication shall not be deemed to be a waiver of any applicable privilege with respect to such communication or document (and/or the contents or subject matter thereof) or with respect to any other documents or information.

7. TGW is responding without in any way waiving, but rather intending to preserve and preserving all objections as to competency, relevancy, materiality and admissibility of the documents or the subject matter thereof.

8. TGW's research, investigation, discovery, and preparation for trial in this matter are presently ongoing and not yet complete. Answers contained herein are based only upon such information and documents that are currently available and specifically known to TGW and its counsel and disclose only those contentions which currently occur to TGW and its counsel.

## ANSWERS AND OBJECTIONS TO INTERROGATORIES

**Interrogatory No. 1:**

With respect to the person signing these Interrogatories and each person known to you to have personal knowledge of any of the allegations, claims, or facts asserted in this lawsuit, identify the following:

    a.    the person's full name and any other names or nicknames the individual is known by;

    b.    the person's last known residential address, home telephone number(s), cellular telephone number(s), and personal e-mail address(es);

    c,    the person's last known business address, telephone number, facsimile number, and work-related or business e-mail address(es);

    d.    the substance such person's personal knowledge regarding the allegations, claims, defenses, or facts asserted in this lawsuit.

**Answer:**

    TGW objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges. Subject to and without waiving these objections, TGW provides the following response: Brett Hamrick, TGW's in-house counsel and legal staff, and various personnel from TGW's IT and Marketing Departments assisted in the retrieval of documents. *See also* the names identified in TGW's Initial Disclosures served on December 20, 2019. *See also* documents produced by TGW. *See also* documents produced by RG Golf.

    Discovery and investigation in this case are ongoing.

**Interrogatory No. 2:**

Identify all persons with whom you or your agents or representatives have communicated, or interviewed, regarding the allegations, claims, or facts asserted in this lawsuit, and identify and describe in detail:
    a.    the date of such communication or interview;

    b.    the location of such communication or interview;

    c.    each person conducting, or otherwise present, at each interview; and

   d.  the substance of the communication or interview.

**Answer:**

  TGW objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges. TGW further objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad as to time and scope, and unduly burdensome.

  Subject to and without waiving these objections, TGW provides the following answer: Other than employees and/or representatives from TGW, including previous employees and representatives of TGW, and with TGW's e-discovery vendor, none. Discovery and investigation in this case are ongoing.

**Interrogatory No. 3:**

Identify any admission as defined by Fed. R. Evid. 801(d)(2) or statement against interest as defined by Fed. R. Evid. 804(b)(3) that you claim TGW have made relating to this action.

**Answer:**

  TGW responds that this Interrogatory impermissibly infringes upon the attorney-client privilege and/or the work-product doctrine, including without limitation on the grounds that determining whether an admission or statement constitutes an "admission as defined by Fed. R. Evid. 801(d)(2) or statement against interest as defined by Fed. R. Evid. 804(b)(3)" requires disclosure of legal analysis and mental impressions of counsel. TGW further objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad as to time and scope, and unduly burdensome.

  Based on these objections, TGW does not provide an answer to this Interrogatory.

**Interrogatory No. 4:**

Identify each person whom you may call as a witness at trial and describe in detail the expected testimony of each.

**Answer:**

  TGW objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges. Subject to and without waiving these objections, TGW provides the following answer:

4

TGW will disclose the identity of its witnesses as prescribed by the Federal Rules of Civil Procedure, the Scheduling Order, and the Court's directives.

Discovery and investigation in this case are ongoing.

**Interrogatory No. 5:**

Identify each person whom you may call as an expert witness at trial.  With respect to each person, identify and describe in detail:

    a.    Any knowledge, skill, experience, training, or education that qualifies the witness to offer testimony pursuant to Fed. R. Evid. 702;

    b.    The substance of the facts and opinions to which such witness is expected to testify; and

    c.    Whether such witness has prepared any reports or documents summarizing the substance of the facts and opinions to which he/she is expected to testify.

**Answer:**

TGW objects to this Interrogatory to the extent that it exceeds the obligations for the disclosure of expert witnesses and testimony in the Federal Rules of Civil Procedure and the Court's Scheduling Order.  Subject to and without waiving these objections, TGW will disclose information relating to experts when and as required by Fed. R. Civ. P. 26 and the Court's Scheduling Order.

Discovery and investigation in this case are ongoing.

**Interrogatory No. 6:**

Identify and describe in detail each and every document that you may use at trial or during any deposition to refresh the recollection of a witness or use as an exhibit.

**Answer:**

TGW objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges.  TGW further objects to this Interrogatory on the grounds that it is vague, ambiguous, overbroad as to time and scope, and unduly burdensome.

Subject to and without waiving these objections, TGW provides the following answer: TGW will provide an exhibit list outlining its exhibits at trial as required under the Court's Scheduling Order and directives. TGW reserves the right to use any documents produced in discovery, or attached to any motion or pleading, by any party as an exhibit at trial.

Discovery and investigation in this case are ongoing.

**Interrogatory No. 7:**

Describe in detail each conversation, communication, or meeting that you or any of your agents have had with Plaintiff related to the disengagement of TGW's computer tracking on sales Plaintiff helped to generate during the term of the Contract.

**Answer:**

TGW objects to this Interrogatory on grounds that the phrase "disengagement of TGW's computer tracking on sales" is vague and ambiguous, and on grounds that the Interrogatory is overbroad as to time and scope, and unduly burdensome.

Subject to and without waiving these objections, TGW provides the following answer: TGW exchanged numerous emails and other communication with Ron Ploog and Greg Anda from RG Golf related to the tracking of sales related to the Contract. In or around early 2013, Ron Ploog contacted TGW regarding concerns that RG Golf's sales were not being properly tracked via the Contract. TGW immediately conducted an investigation and discovered that in or around July 1, 2012, a specific tracking cookie was removed, but replaced by January 24, 2013. At the time, this cookie was removed as an attempt to improve overall attribution of sites to better track commissions and sales. TGW calculated that the resulting, relatively small amount of commission not tracked for RG Golf as a result of this cookie's removal was approximately $4,695.92. After discovering this, TGW shared this information with RG Golf in March 2013 and offered full compensation to RG Golf for the sales commissions allegedly not paid during this time period when this cookie was disengaged.

Despite TGW's efforts to resolve the issue, and despite providing no evidence to support this allegation, Mr. Ploog alleged that the tracking issue actually began in June 2011, not July 1, 2012. RG Golf continued to demand more commissions from TGW even though TGW was not contractually obligated to retain or track RG Golf's sales with this specific tracking cookie, and in fact, there were other methods to ensure that RG Golf receive its proper commission after the discovery of this unintentional oversight. The parties continued to dispute this issue, and exchanged communications concerning the same through November 2014. Up and to the termination of the Contract, TGW

continued to track sales commissions due to RG Golf and fully compensated RG Golf for the same. In fact, TGW actually <u>overpaid</u> RG Golf during the term of the Contract.

*See also* documents produced by TGW. *See also* documents produced by RG Golf. Discovery and investigation in this case are ongoing.

**Interrogatory No. 8:**

Describe in detail each conversation, communication, or meeting that you or any of your agents have had with any third-party related to the disengagement of TGW's computer tracking on sales Plaintiff helped to generate during the term of the Contract.

**Answer:**

TGW objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges. TGW further objects to this Interrogatory on grounds that the phrase "disengagement of TGW's computer tracking on sales" is vague and ambiguous, and on grounds that the Interrogatory is overbroad as to time and scope, and unduly burdensome.

Subject to and without waiving these objections, TGW provides the following answer: TGW contacted a potential third-party vendor to analyze RG Golf's sales to date in or around April 2013, but as communicated to Mr. Ploog at this time, TGW did not feel like the third-party vendor offered a satisfactory product, and instead, TGW engaged in exhaustive internal analysis instead.

*See also* documents produced by TGW. *See also* documents produced by RG Golf. Discovery and investigation in this case are ongoing.

**Interrogatory No. 9:**

Identify the date(s) TGW disengaged the computer tracking on the sales Plaintiff helped to generate and the date(s) TGW reengaged the computer tracking.

**Answer:**

TGW objects to this Interrogatory on grounds that the phrase "disengaged the computer tracking on the sales" is vague and ambiguous.

Subject to and without waiving these objections, TGW provides the following answer: *See* TGW's Answer to Interrogatory No. 7. *See also* documents produced by TGW. *See also* documents produced by RG Golf. Discovery and investigation in this case are ongoing

**Interrogatory No. 10:**

Identify and describe each and every reason the computer tracking was disengaged on the sales Plaintiff helped to generate.

**Answer:**

TGW objects to this Interrogatory on grounds that the phrase "disengaged on the sales" is vague and ambiguous.

Subject to and without waiving these objections, TGW provides the following answer: *See* TGW's Answer to Interrogatory No. 7.  *See also* documents produced by TGW.  *See also* documents produced by RG Golf.  Discovery and investigation in this case are ongoing.

**Interrogatory No. 11:**

Describe in detail each conversation, communication, or meeting that you or any of your agents have had with Plaintiff related to the IT Report and Plaintiff's demand to see the IT Report.

**Answer:**

TGW objects to this Interrogatory on grounds that the phrase "IT Report" is vague and ambiguous, and on grounds that the Interrogatory is overbroad as to time and scope, and unduly burdensome.

Subject to and without waiving these objections, TGW provides the following answer: Throughout the term of the Contract, TGW would provide RG Golf monthly commission reports that tracked TGW's sales for that month and RG Golf's corresponding sales commission for qualifying customers and transactions under the Contract.  These commission reports were based on TGW's sales data.

*See also* documents produced by TGW.  *See also* documents produced by RG Golf.  Discovery and investigation in this case are ongoing.

**Interrogatory No. 12:**

If you contend Plaintiff is not owed any additional referral fees or sales commissions, state every factual basis supporting this contention.

**Answer:**

TGW objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges. TGW further objects to this Interrogatory on grounds that the phrase "referral fees or sales commissions" is undefined, vague and ambiguous, and on grounds that the Interrogatory is overbroad as to time and scope, and unduly burdensome.

Subject to and without waiving these objections, TGW provides the following answer: TGW has conducted an exhaustive review and analysis of the underlying data concerning all transactions related to RG Golf and the Contract from March 10, 2011 to December 11, 2014. TGW's review and analysis included, but was not necessarily limited to, the following steps:

1. Generate a report of all customer numbers who ever purchased an order through the RG Golf Sales Channel, pursuant to the Contract.

2. Generate a report of all orders ever placed by those customer numbers.

3. Generate a report of all orders placed by those customer numbers that actually shipped.

4. Determine which of the shipped orders qualified for commission under the Contract.

5. Determine the Commission due on the qualifying orders.

Based on the above analysis, TGW came to the following conclusions:

1. There were 22,730 customer numbers who ever placed an order through RG Golf Sales Channels.

    a. 8,865(39%) were originally TGW customers.

    b. 13,865(61%) were originally RG Golf customers.

2. Those 22,730 customer numbers generated $8,858,976.50 in net sales over the life of the Contract.

3. Of the total $8,858,976.50 in net sales, $3,277,249.88 was eligible for commission.

    4.    According to accounts payable records, TGW paid RG Golf at least **$548,000.00**.

    5.    According to TGW's analysis of the data according to the contract terms, TGW should have paid RG Golf total commissions of at least **$315,000.00**.

Thus, based on TGW's analysis, TGW <u>overpaid</u> RG Golf in the amount of at least **$230,000.00** during the term of the Contract.

*See also* documents produced pursuant to Fed. R. Civ. P. 33(d), TGW_00005532 - TGW_00005535.  *See also* documents produced by TGW.  *See also* documents produced by RG Golf.  Discovery and investigation in this case are ongoing.

**Interrogatory No. 13:**

Identify the total amount of all sales you contend Plaintiff was or is owed commission on during the term of the Contract.

**Answer:**

TGW objects to this Interrogatory on grounds that the phrase "total amount of all sales you contend Plaintiff was or is owed commission on" is undefined, vague, ambiguous and unintelligible as written.

Subject to and without waiving these objections, TGW provides the following answer: *See* TGW's Answer to Interrogatory No. 12.  *See also* documents produced pursuant to Fed. R. Civ. P. 33(d), TGW_00005532 - TGW_00005535.  *See also* documents produced by TGW.  *See also* documents produced by RG Golf.  Discovery and investigation in this case are ongoing.

**Interrogatory No. 14:**

Identify the total amount of commissions paid to Plaintiff pursuant to the Contract.

**Answer:**

*See* TGW's Answer to Interrogatory No. 12.  *See also* documents produced pursuant to Fed. R. Civ. P. 33(d), TGW_00005532 - TGW_00005535.  *See also* documents produced by TGW.  *See also* documents produced by RG Golf.  Discovery and investigation in this case are ongoing.

**Interrogatory No. 15:**

Identify the total amount of commissions, if any, you contend is still owed to Plaintiff.

**Answer:**

None. *See* TGW's Answer to Interrogatory No. 12. *See also* documents produced pursuant to Fed. R. Civ. P. 33(d), TGW_00005532 - TGW_00005535. *See also* documents produced by TGW. *See also* documents produced by RG Golf. Discovery and investigation in this case are ongoing.

**Interrogatory No. 16:**

If the IT Reports no longer exist or are no longer in your possession, state ever (sic) reason why they were destroyed or are no longer in your possession, including but not limited to the date in which they were destroyed or removed from your possession.

**Answer:**

TGW objects to this Interrogatory on grounds that the phrase "IT Reports" is vague and ambiguous, and on grounds that the Interrogatory is overbroad as to time and scope, and unduly burdensome.

Subject to and without waiving these objections, TGW provides the following answer: The data related to the Contract, RG Golf's sales, and RG Golf's related sales commissions was <u>not</u> destroyed. Instead, the internally developed web platform, originally built in approximately 1998 and used during the Contract's term with RG Golf (the "Legacy System"), was replaced in late 2015 by a commercially developed web platform. Subsequently, the Legacy System was decommissioned in January 2017 due to the cost and complexity of maintaining the system and because the system no longer served a business need. At the time of TGW's decommissioning of the Legacy System, TGW and RG Golf were not actively engaged in any litigation; the contract at issue in this lawsuit was terminated in November 2014, more than two years earlier. In addition, the trademark litigation between the parties ended in October 2015, fully fourteen (14) months earlier. Finally, the lawsuit filed by RG Golf in Florida, which was subsequently dismissed by the Court, was not commenced until December 2017, some eleven (11) months later. As a result, at the time of the decommissioning of the Legacy System, TGW did not reasonably anticipate RG Golf pursuing an action against TGW for events originating several years prior.

Notwithstanding the decommissioning of the Legacy System, TGW retained the Vmware file ("VMK") that was associated with and/or contained the Legacy System's underlying data on the Northern Tool and Equipment ("NTE") vBlock server. The VMK

was recovered by NTE in or around May 2019 with respect to the database server, and TGW was able to install a copy of the VMK into a standalone Oracle server at its NTE facilities located in Wichita, Kansas. Following that, TGW was able to extract the data from the Legacy Server, as well as provide its conclusions for the amount paid and owed to RG Golf in TGW's Answer to Interrogatory No. 12.

TGW's IBM vBlock server referenced above was removed from service at NTE in September 2019 due to change of physical environment. However, prior to that, TGW took additional steps to preserve the Legacy System data, and had the VMK preserved by NightOwl, a third party preservation service and e-discovery vendor.

TGW utilizes an Enterprise Resource Planning System ("ERP") originally called eCometry that was branded as JDA Direct Commerce Suite until recently (which was recently rebranded as Blue Yonder). TGW originally implemented this ERP in approximately 2000, and it is the system of record for TGW sales, customer, and inventory data during the term of the Contract.

Data from the above sources was extracted into data reports, which have been produced by TGW. *See* TGW_00005532 - TGW_00005535. *See also* documents produced by TGW. *See also* documents produced by RG Golf. Discovery and investigation in this case are ongoing.

**Interrogatory No. 17:**

Identify if you ever attempted to buy Plaintiff's domain name golfwarehouse.com at any time, either directly or indirectly, and if so, identify the individual involved, dates, terms, discussion and result of the attempts.

**Answer:**

TGW objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the work-product doctrine, or other applicable privileges. TGW further objects to this Interrogatory on grounds that it seeks information that is not relevant to the claims and defenses in this case.

Subject to and without waiving these objections, TGW provides the following answer: In late 2016 or early 2017, some discussions took place regarding TGW's potential acquisition of the "golfwarehouse.com" through a third-party broker. However, the potential acquisition never advanced into a formal offer of purchase. In addition, according to the findings in the arbitration matter between Mark Marney and Golf Warehouse dated May 9, 2000, a prior owner of TGW may have made various offers to purchase the domain name sometime prior to May 9, 2000. However, TGW has no direct knowledge of said negotiations.

**Interrogatory No. 18:**

Identify all cookies, super cookies, internet tracking, phone tracking and any other tracking of repeat business which was used pursuant to the Contract, including but not limited to the date it was used, date it was discontinued, and results obtained.

**Answer:**

TGW objects to this Interrogatory on grounds that the phrase "cookies, super cookies, internet tracking, phone tracking and any other tracking of repeat business" is undefined, vague and ambiguous, and on grounds that the Interrogatory is overbroad as to time and scope, and unduly burdensome.

Subject to and without waiving these objections, TGW provides the following answer: Please note that per the documents referenced below (TGW_00005532 - TGW_00005535) and TGW's analysis, offer numbers A0002401 and A0002911 identify orders through the RG Golf Sales Channels.  *See also* documents produced pursuant to Fed. R. Civ. P. 33(d), TGW_00005532 - TGW_00005535.  *See also* TGW's Answers to Interrogatory Nos. 12-16.  *See also* documents produced by RG Golf.  Discovery and investigation in this case are ongoing.

**As to Answers to Interrogatories:**

I, Brett Hamrick, declare that I am authorized to make this verification on behalf of The Golf Warehouse, Inc. I declare under penalty of perjury that everything stated in this document is true and correct to the best of my knowledge.

Executed on May 15, 2020 in Sedgwick County, State of Kansas.

*[signature: Brett H.]*

**As to Objections:**

                                          **FAFINSKI MARK & JOHNSON, P.A.**

Dated: May 15, 2020                  */s/ Patrick J. Rooney*
                                          Patrick J. Rooney (#0198274)
                                          Schaan P. Barth (#0397898)
                                          Flagship Corporate Center
                                          775 Prairie Center Drive, Suite 400
                                          Eden Prairie, MN  55344
                                          Telephone:  952.995.9500
                                          patrick.rooney@fmjlaw.com
                                          schaan.barth@fmjlaw.com

                                          **Attorneys for Defendant**
                                          **The Golf Warehouse, Inc.**