UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RG Golf Warehouse, Inc.,<br><br>  Plaintiff,<br><br>vs.<br><br>The Golf Warehouse, LLC,<br><br>  Defendant. | Case No.:  19-cv-00585 (WMW/DTS)<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY AND FOR SUMMARY JUDGMENT** |

Defendant The Golf Warehouse, LLC ("TGW") submits this Reply in support of its Motion to Exclude Expert Testimony and for Summary Judgment ("Motion").

## ARGUMENT

### I.   FERNANDO TORRES' OPINIONS ARE INADMISSIBLE.

**A.   The Court Must Closely Scrutinize the Factual Basis of Torres' Opinions.**

In the years since the United States Supreme Court decided *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Eighth Circuit has affirmed numerous decisions excluding expert opinions that lacked sufficient factual support. *See, e.g.*, *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952-53 (8th Cir. 2014) (affirming exclusion of an expert opinion that "did not fit the specific facts" of the case); *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 415-16 (8th Cir. 2005) (same for expert opinion based on invalid assumptions); *U.S. Salt, Inc. v. Broken Arrow, Inc.*, 563 F.3d 687, 690 (8th Cir. 2009) (same because the expert's "assumptions and estimates . . . were nothing more than optimistic projections."). It has also *reversed* decisions

admitting unsupported expert opinions. *See, e.g., Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 776-77 (8th Cir. 2004) (reversing decision allowing expert testimony because the testimony "did not sufficiently aid the jury" in that it relied on assumptions rather than analysis); *Weisgram v. Marley Co.*, 169 F.3d 514, 521 (8th Cir. 1999) (same for expert testimony that amounted "to no more than 'subjective belief or unsupported speculation.'").

Given these precedents, it is clear that the *Daubert* standard and Rule 702, including as they were recently applied in *Amador v. 3M Co.*, 9 F.4th 768 (8th Cir. 2021) ("*Bair Hugger*"), require this Court to exercise its gatekeeping function by closely scrutinizing the factual basis of proposed expert opinions and excluding those that lack a sufficient foundation. Such an analysis of Fernando Torres' ("Torres") opinions here compels their exclusion.

> **B.   RG Golf Fails to Prove the Admissibility of Torres' Opinions Under *Daubert* and Rule 702.**

In opposition to TGW's Motion, RG Golf does not dispute that: 1) Torres' opinions are not based on his own industry expertise, of which he has none; 2) Torres arrived at his 2.3 and 2.5 repeat order per year parameters (the "Parameters") without independent analysis; or 3) the damages estimate in Section 2i of Torres' Report forms the basis of his other four damages estimates. (ECF 116.)

Instead, RG Golf argues that Torres' Parameters are admissible because they rely on two separate, independent sources: the "extensive experience of RG Golf's

2

management," and "Mr. Maki's experience at Golfsmith." (ECF 116, 17-18; ECF 117 ¶ 3.) But neither of these sources is a reliable factual basis for Torres' opinions.

First, regarding the 2.3 Parameter and "Mr. Maki's experience at Golfsmith," the undisputed testimony shows that Maki's experience only concerned a *subset* of Golfsmith's customers: "people who signed up for [Golfsmith's] e-mail program." (ECF 105-13, 27:10-11.) In fact, Maki specifically *denied* having knowledge of the "online golf industry average repeat customer [rate]." (*Id.*, 27:18-24.) In his Declaration, Torres incorrectly claims Maki's experience provides the basis for opinions that purportedly reflect "the relevant industry's general experience." (ECF 117 ¶ 3.) However, as Maki's testimony makes clear, his experience provides no such support.

Second, regarding the 2.5 Parameter and RG Golf's experience, Torres now claims that RG Golf's experience was "*extensive*" (ECF 117 ¶ 3 (emphasis added)), contradicting his prior testimony that he did not "independently evaluate" RG Golf's experience (ECF 105-12, 61:4-6) and could not describe it "with any certainty." (*Id.*, 60:22-23.) But RG Golf *never claimed any such experience*. In fact, when asked what RG Golf relied upon to derive its 2.5 Parameter, RG Golf's designee cited *prior statements by Jamie Maki*, not its own experience. (ECF 105-2, 93:17-23.)

Thus, while Torres claims the 2.3 and 2.5 Parameters come from two separate sources (ECF 117 ¶ 3), the undisputed record shows they are both based *solely on Maki's experience*, which was limited to *a subset of Golfsmith's customers*. Furthermore, Torres did no analysis to determine whether a repeat order rate from Golfsmith—which Maki said "operated very differently" than TGW (ECF 105-13, 28:17-19)—could provide a

3

useful point of comparison.  (ECF 105-12, 73:10-12 ("Q: Have you done any research to compare Golfsmith's business to TGW's business? A: No.")); 77:2-78:12 (admitting various ways he failed to compare TGW to Golfsmith).)  Thus, by itself, Maki's testimony is wholly inadequate to form a basis for Torres' opinions, which purportedly reflect "the relevant industry's general experience." (ECF 117 ¶ 3.)

Opinions like those expressed by Torres are the precise reason why the gatekeeping function of Rule 702 exists.  In adopting the Parameters and using them for all of his damages estimates, Torres failed to apply any independent expertise to support the critical component of his opinion—the number of commissionable repeat orders allegedly not attributed to RG Golf.  Instead, he blindly took information from RG Golf, repeated it without analysis, and mischaracterized it along the way.

In addition, by relying on a single piece of limited, anecdotal testimony from Maki without independently verifying it, he rendered his analysis "nothing more than optimistic projections," *U.S. Salt*, 563 F.3d at 690, leaving a vast "analytical gap" between his conclusions and Maki's testimony.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Torres' analysis and opinions do nothing to bridge that gap.  As such, they must be excluded.

    **C.**    **The *Bair Hugger* Decision Does Not Save Torres' Opinions.**

Instead of addressing the factual flaws in Torres' opinions, RG Golf relies on a superficial reading of the *Bair Hugger* decision.  However, *Bair Hugger* doesn't require this Court to ignore Torres' mischaracterizations of the record and the "analytical gap" between his opinions and their purported factual basis.  *Joiner*, 522 U.S. at 146 (1997).

4

*Bair Hugger* involved claims against 3M regarding its forced air orthopedic surgery patient-warming device. The district court excluded Plaintiffs' general-causation medical experts, who found general causation based in part on an epidemiological study ("McGovern 2011"), separately admitted under Rule 702, that did not itself establish causation.

On appeal, the Eighth Circuit reversed their exclusion. While noting that a district court "may exclude an expert's opinion if it is 'so fundamentally unsupported' by its factual basis 'that it can offer no assistance to the jury,'"[1] the Court found that the experts' reliance on McGovern 2011 was not necessarily improper "so long as an expert does the work 'to bridge the gap between association and causation.'" *Id.* at 778-80. It noted that McGovern 2011 was an epidemiological report, which by its nature could not establish causation, that it was not the sole basis of the expert's causation opinions, and that the experts relied upon other evidence that created a "plausible" causation mechanism. *Id.* at 780, 785-86. It therefore held that the district court committed clear error when it excluded this portion of the experts' opinions. *Id.*

There is no comparison between the *Bair Hugger* general causation opinions and Torres' damages opinions. Torres' 2.3 and 2.5 Parameters are not drawn from any underlying study, let alone a detailed, separately admissible study like McGovern 2011.

---

[1]     Citing *Bair Hugger*, RG Golf asserts that "the court should *only* exclude an expert's opinion" if it doesn't meet the "so fundamentally unsupported standard." (ECF 116, 12 (emphasis added).) However, that assertion misreads *Bair Hugger,* which did not adopt a "only if" standard with respect to Rule 702. On the contrary, *Bair Hugger* specifically noted that "the district court has 'broad discretion'" when exercising its gatekeeping function, to "ensur[e] that any and all … testimony or evidence admitted is not only relevant, but reliable." *Id.* at 776-77.

They rest entirely on the limited, anecdotal testimony of Maki, who specifically denied having any knowledge of "the online golf industry average repeat customer rate." (ECF 105, 27:18-24.) The "analytical gap" between Torres' data and his opinions is vast, *Joiner*, 522 U.S. at 146, and it renders his opinions unfit for presentation at trial.

If there is any comparison to be made with *Bair Hugger*, it is with the Court's exclusion of the testimony of Plaintiffs' engineering expert, who supported his opinions by citing his own knowledge and asking the jury to "trust [him] about this." *Bair Hugger*, 9 F.4th at 782. The Eighth Circuit noted this unreliable testimony was "connected to existing data only by the *ipse dixit* of the expert." *Id*. Here, lacking a legitimate factual basis for his claims about the "relevant industry's general experience," Torres' opinions effectively rely on his own *ipse dixit*, making them inadmissible.[2]

While cross-examination is often an effective way to address the limitations of expert opinions, under *Daubert* and Rule 702, some opinions are so speculative, baseless, and unsupported that they cannot be presented to a jury in the first place. Torres' opinions fit into that category, and they must therefore be excluded.

---

[2] RG Golf suggests its failure to conduct any independent analysis to assess the validity of either Parameter is excusable because, according to Torres, "this type of key performance indicator is generally a well-guarded trade secret and is not amenable to a third-party comprehensive survey." (Pl.'s Opp. 18.) However, the fact that obtaining underlying data to support an opinion may be difficult—if that is in fact the case—is no excuse for offering an opinion without any factual support. Indeed, it is just another way of saying "trust me about this."

## II. TGW'S MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

### A. Because Torres' Opinions are Inadmissible, RG Golf Has No Evidence to Support the Damages Element of Its Breach of Contract Claim.

RG Golf argues that TGW's Motion for Summary Judgment should fail even if Torres' opinions are excluded. (Pl.'s Opp. 33-34.) That is incorrect. RG Golf cites several cases, but none of them stands for the proposition that it can evade summary judgment even though it lacks evidence on a necessary element of its claim. As explained in TGW's Motion, if Torres' opinions are excluded, RG Golf will be without any evidence to support its damages case. For this reason, TGW is entitled to summary judgment on RG Golf's breach of contract claim.

### B. TGW is Entitled to Summary Judgment on the Liability Portion of RG Golf's Breach of Contract Claim.

#### 1. The Agreement unambiguously provided that only orders placed "through the RG Golf Sales Channels" were commissionable.

In its Opposition, RG Golf does not dispute that the Agreement unambiguously limited TGW's obligation to pay commissions to those orders placed "through the RG Golf, Inc. Sales Channels." (ECF 105-5, Sec. 1(c).) While RG Golf argues that certain provisions of the Agreement are ambiguous or were subsequently modified, it apparently makes no such allegation about this provision. As such, TGW is entitled to summary judgment on any claim by RG Golf for unpaid commissions on orders placed outside of the RG Golf Sales Channels.

### 2. The Agreement's "reasonable best efforts" clause is unambiguous.

Section 1 of the Agreement states that TGW "will use its reasonable best efforts to have a customer self-identify as a New Customer or Return Customer based on the customer selecting its previous profile information . . . ." (ECF 105-5, Sec 1.) RG Golf argues this provision is ambiguous because it "does not outline how the parties were to execute the tracking of customers" who placed orders through the RG Golf Sales Channels. (Pl.'s Opp. 26.) It also argues the provision is ambiguous because of "extrinsic evidence." (*Id.*, 25.) RG Golf's arguments fail.

First, under Indiana law, extrinsic evidence plays no role in a court's initial determination of whether a contract is ambiguous. A court must "ascertain the parties' intent at the time the contract was made *as disclosed by the language used to express their rights and duties*." *First Federal Sav. Bank v. Key Markets, Inc.*, 559 N.E.2d 600, 603 (Ind. 1990) (emphasis added). If a provision is unambiguous, a court simply applies it. *Jackson v. DeFabis*, 553 N.E.2d 1212, 1215 (Ind. App. 1990). "Parol or extrinsic evidence is inadmissible to expand, vary or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence." *See Orme v. Estate of Kruwell*, 453 N.E.2d 355, 356 (Ind. App. 1983).

Furthermore, a contract's silence is not ambiguity. No contract can exhaustively address every issue the parties may face as they perform their contractual obligations. A contract's silence on an issue does not make it ambiguous and open the door to parol evidence. *Indiana Glass Co. v. Indiana Mich. Power Co.*, 692 N.E.2d 886, 887, FN 1

(Ind. App. 1998) (finding "no merit" in the claim that a contract's "silence as to the recovery of attorney's fees" created an ambiguity); *George Uzelac & Assocs. v. Guzik*, 663 N.E.2d 238, 240-41 (Ind. App. 1996) (the court "did not err" in finding the contract unambiguous because it was "silent as to whether former employees must repay advances."). A contract also need not define every contract term to be unambiguous. *Haag v. Castro*, 959 N.E.2d 819, 821 (Ind. 2012) (citation omitted) (stating that simply because "[an insurance] policy does not define a term does not necessarily make the term ambiguous.")

Far from being ambiguous, Section 1 unambiguously reflects the parties' agreement that TGW would have discretion in using its "reasonable best efforts" to have customers self-identify. (ECF 105-5, Sec 1.) The parties' decision to grant TGW discretion rather than address the tracking issue in detailed contract terms does not render the Agreement ambiguous. *See Am. Contrs. Indem. Co. v. Lights & Signals, Inc.*, No.: 1:11-CV-193-TLS, 2012 U.S. Dist. LEXIS 24091, *11-12, 2012 WL 611823 (N.D. Ind. Feb. 24, 2012) (finding a provision that gave Plaintiff "sole and absolute discretion" in certain matters to be "unambiguous"). For these reasons, extrinsic evidence may not be used to interpret Section 1 of the Agreement.

### 3. The Agreement's written modification clause is unambiguous.

The Agreement's modification clause states that the Agreement "may be amended . . . only by a written instrument executed by the parties." (ECF 105-5, Sec 1.) RG Golf makes the conclusory argument that the clause "lacks clarity" (Pl.'s Opp. 27), but it does not explain why it is unclear or what its differing interpretations might be. The Court

9

may disregard RG Golf's conclusory argument. The modification clause is unambiguous, and the Court should apply it as written. *Evan v. Poe & Assocs.*, 873 N.E.2d 92, 98 (Ind. App. 2007) (Indiana courts give effect to clear and unambiguous contract provisions).

### 4. The Agreement was not modified to require the use of "cookie tracking."

RG Golf alleges the parties "modified the contract to include the use of the two-week tracking cookie." (Pl.'s Opp. 22.) But RG Golf has failed to produce evidence to support this claim.

First, it is unclear why TGW's alleged failure to use "cookie tracking" matters to the case. As previously explained, TGW has historical order data, which it produced to RG Golf in discovery, that TGW has now used to properly attribute commissionable web orders to RG Golf. Cookie tracking would have added nothing to TGW's ability to track and attribute web orders.

Even so, RG Golf has failed to cite admissible record evidence of a "modification" of the Agreement to require cookie tracking. Under Indiana law, a modification is the formation of new contract and requires proof of each element of a contract. *O.K. Sand & Gravel v. Martin Marietta Corp.*, 819 F. Supp. 771, 782 (S.D. Ind. Sept. 18, 1992) (citing *Thatcher Engineering Corp v. Bihlman*, 473 N.E.2d 1022, 1028 (Ind. Ct. App. 1985)). This includes "an offer and an acceptance of the offer which meets the terms of the offer in every respect." *Keating v. Burton*, 617 N.E.2d 588, 592 (Ind. App. 1993).

RG Golf cites no "written instrument executed by the parties" reflecting this alleged modification (ECF 105-5, Sec. 1), but instead cites deposition transcripts and certain e-mails. First, several of the cited documents and transcript excerpts appear not to match the arguments they are intended to support in RG Golf's brief. (*See, e.g.*, Pl.'s Opp. at 23 (citing "TGW Depo. 61:17-21, Ex. 8, 68:19 – 69:7, 70:8-17, 72:16 – 73:20, Ex. 11; *See also* TGW Depo. Ex. 12."))

Where RG Golf's citations appear in sync with its arguments, the cited evidence does not on its face indicate that TGW adopted any "course of conduct," communicated any offer or acceptance, or exchanged any consideration that modified the Agreement. For example, in one e-mail offered by RG Golf, written after execution of the Agreement, then-TGW CEO Brad Wolansky wrote that "nothing has changed in the spirit of our agreement together." (ECF 110-1, 65.) It is unclear how this statement that "nothing has changed" could be cited as evidence that the parties mutually *changed* the Agreement. Similarly, a subsequent e-mail written by Patrick Livingston about the "cookie duration" issue was internal to TGW and did not communicate any offer or acceptance to RG Golf. (ECF 110-2.)

Because RG Golf's modification argument relies on assertions by counsel and not admissible record evidence, the Court should reject it and find that the Agreement signed by the parties (ECF 105-5) constitutes their entire agreement.

> **5.   A modification for "early termination" damages would bring the Agreement within Indiana's Statute of Frauds, making it unenforceable.**

Even though TGW terminated the Agreement in December 2014, RG Golf seeks "early termination" damages for commissions that TGW allegedly failed to pay through March 2016.  (Pl.'s Opp. 29.)  As TGW explained in its Motion, the Agreement contains no provision requiring TGW to pay commissions after termination.  RG Golf now argues the Agreement was modified "to include payment of repeat customers for the life of the contract" and specifically "through *the end of the five-year term*."  (Pl.'s Opp. 29 (emphasis added).)

As before, RG Golf has cited no record evidence of such a modification.  RG Golf again cites Wolansky's statement that "nothing has changed in the spirit of our agreement together," which came in response to RG Golf's e-mail stating that it expected to "gain[]" each "customer for life."  (ECF 110-1, 65.)  Again, Wolansky's e-mail on its face does not indicate an intent to change the Agreement.

RG Golf's argument also fails because the modification would bring the Agreement under Indiana's Statute of Frauds, making it unenforceable.  Indiana law provides that an "agreement that is not to be performed within one (1) year from the making of the agreement" is only enforceable if it is "in writing and signed by the party against whom the action is brought or by the party's authorized agent."  Ind. Code § 32-21-1-1(a), (b)(5).  This provision covers all contracts or agreements that are impossible for a party to completely perform within one year.  *Tobin v. Ruman*, 819 N.E.2d 78, 84-85 (Ind. App. 2004).

Here, RG Golf alleges the parties modified the Agreement before its termination in December 2014 to require TGW to pay commissions on "repeat orders" through March 2016. (Pl.'s Opp. 27-28.) Since in RG Golf's view this modified contractual obligation survived the Agreement's December 2014 termination, TGW could not have satisfied the obligation within one year. As such, the alleged modification would be enforceable only if expressed in a writing signed by TGW. But RG Golf has not produced any such writing because none exists. For these reasons, TGW is entitled to summary judgment on any alleged early termination damages, which are unsupported by the record and would in any case be unenforceable.

### 6. Torres' "opportunity cost" calculation double counts RG Golf's alleged damages.

RG Golf opposes TGW's Motion on its "opportunity cost" damages claim, asserting that "[s]horted commissions, which is the basis for the maximum calculation in the range of damages for the Torres' Report, is the same as lost profits." (Pl.'s Opp. 31.) This directly contradicts Torres' deposition testimony, which states:

> A. **I am not calculating lost profits in a conventional manner. I am calculating what is the lost revenue from the absence of** -- from not being paid the commissions determined as damages in the first place.

(ECF 105-12, 121:22-122:1 (emphasis added).)

Torres' Report also clearly states that Torres calculated RG Golf's opportunity cost damages by taking its alleged "repeat order" damages and multiplying those amounts by Torres' average "cost-per-click" factor, yielding additional visitors and therefore additional commissions. (ECF 105-10, 22, FNs 37, 38.)

13

RG Golf cannot revise Torres' Report and sworn testimony through argument in opposition to summary judgment. For the reasons set forth in TGW's Motion, TGW is entitled to summary judgment on RG Golf's "opportunity cost" claim to the extent it double-counts lost revenue as lost profits.

## CONCLUSION

For these reasons, TGW respectfully requests that the Court grant its Motion to Exclude Expert Testimony and its Motion for Summary Judgment in all respects.

Respectfully submitted,

**FAFINSKI MARK & JOHNSON, P.A.**

Dated: February 9, 2022

By: *s/ Patrick J. Rooney*
Patrick J. Rooney (#0198274)
Bradley R. Hutter (#0396531)
Flagship Corporate Center
775 Prairie Center Drive, Suite 400
Eden Prairie, MN 55344
Telephone: 952.995.9500
Facsimile: 952.995.9577
*patrick.rooney@fmjlaw.com*
*bradley.hutter@fmjlaw.com*

**Attorneys for Defendant
The Golf Warehouse, LLC**